# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JOHN R. BOYD,

    Plaintiff,

    v.                                                       Civ. No. 18-748 WJ/SCY

JP MORGAN CHASE BANK,

    Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In 2005, Plaintiff John R. Boyd received a brochure for a credit card Defendant Chase Bank offered which advertised an introductory APR of 0% for 15 months and a 7.99% fixed APR after that. In a footnote attached to the word APR, the brochure advised that the APR was subject to change at Chase's discretion. Plaintiff asserts he did not read the footnote. He applied for the card, was approved, and continued using it for decades. Chase eventually advised him that it was changing the APR to a variable rate and Plaintiff, believing he was entitled to a fixed APR of 7.99% forever, sued. Plaintiff's claim to an enduring 7.99% APR is undermined by contracts accompanying Plaintiff's credit card that reserved Chase's right to change the APR and by the notice Chase sent to Plaintiff about the change to the APR. Because this contractual language and notice also fulfills Chase's obligations under federal law, the Court grants Chase summary judgment on all claims in Plaintiff's complaint.

## BACKGROUND

A.     <u>Factual history</u>

Plaintiff received a solicitation to sign up for a credit card from Defendant Chase Bank USA, N.A. ("Chase") in 2005. Affidavit of Ronald Boyd ("Boyd Aff."), Doc. 20-1 at 1 ¶ 2;

1

Exhibit E to Boyd Aff., Doc. 20-1 at 11-12. That solicitation advised him he was pre-approved for a credit card at an introductory rate of 0% APR until February 1, 2007. Doc. 20-1 at 11. "Keep saving," the solicitation advised, "after the introductory period with a 7.99% fixed APR[3] on purchases and balance transfers. Still lower than most cards." *Id.* (superscript in original). The text of footnote 3 appears on the following page. It states:

> You understand that the terms of your account, including the APRs, are subject to change. This means that the APRs for this offer are not guaranteed; APRs may change to higher APRs, fixed APRs may change to variable APRs, or variable APRs may change to fixed APRs. We reserve the right to change the terms (including the APRs) at any time for any reason, in addition to APR increases that may occur for failure to comply with the terms of your account. Any changes will be in accordance with your Cardmember Agreement. Please read very carefully the "Rate, Fee and Other Cost Information" section included with this offer.

Doc. 20-1 at 12. Plaintiff noticed that there was a footnote 3, but didn't read it. Boyd Aff., Doc. 20-1 at 1-2 ¶ 5.

Plaintiff applied for the credit card and was approved. Boyd Aff., Doc. 20-1 at 1 ¶ 4. The Cardmember Agreement that accompanied the credit card (hereinafter "Original Cardmember Agreement") stated:

> We can change this agreement at any time, regardless of whether you have access to your account, by adding, deleting, or modifying any provision. Our right to add, delete, or modify provisions includes financial terms, such as the APRs and fees, and other terms such as the nature, extent, and enforcement of the rights and obligations you or we may have relating to this agreement. Modifications, additions, or deletions are called "Changes" or a "Change."

Def's Mot. for Summary Judgment, Fact #12,[1] Doc. 30 at 5-6; Def's Exhibit 1-C, Doc. 26-3 at 4.

In 2010, Chase notified Plaintiff that it was increasing the APR on the card. Boyd Aff., Doc. 20-1 at 2 ¶ 6. Plaintiff filed suit in state court in May 2010, bringing counts for fraud, unfair

---

[1] Plaintiff's "dispute" on this fact is a legal argument—he did not agree to this term. Doc. 37 at 2. The Court thus considers Defendant's fact undisputed and addresses Plaintiff's argument in the Discussion section below.

2

trade practices, bad faith, and a putative class action. Boyd Aff., Exhibit E, Doc. 20-1 at 4-10. Plaintiff and Chase settled that lawsuit, agreeing to return Plaintiff's card to a fixed APR of 7.99% and providing Plaintiff with a certain sum of money.[2] Boyd Aff., Doc. 20-1 at 2 ¶ 8. The APR remained 7.99% from that time until early 2018. Boyd Aff., Doc. 20-1 at 2 ¶ 9.

At some unspecified time prior to 2018, Chase sent Plaintiff a new Cardmember Agreement amending the terms governing his account. Def's Mot. for Summary Judgment, Fact # 13, Doc. 30 at 6. The new agreement (hereinafter "the New Cardmember Agreement") similarly stated:

> We may change the terms of this agreement including APRs and fees from time to time. We may also add new terms or delete terms. APRs or other terms may also change without amendment, for example when the Prime Rate changes.

Def's Exhibit 1-G, Doc. 26-7 at 6. Plaintiff does not dispute this fact, but points out that "If the change from a fixed to a variable APR is rejected Plaintiff loses his credit card." Doc. 37 at 2.

Also at an unspecified time, but after issuing the New Cardmember Agreement, Chase sent Plaintiff a change-in-terms notification to inform him that, as of January 22, 2018, the APR for his account would change from a fixed APR to a variable APR at a base rate of 12.99%. Boyd Aff., Doc. 20-1 at 2 ¶ 9; Def's Exhibit 1-E, Doc. 26-5. The notice stated that Plaintiff could reject the change by contacting Chase by January 21, 2018. Def's Exhibit 1-E, Doc. 26-5 at 1. If contacted, Chase would close the credit card account. *Id.* Plaintiff did not contact Chase until March 8, 2018. Boyd Aff., Exhibit F, Doc. 20-1 at 13. In his March 8 letter, Plaintiff did not request his account be closed, but stated he would sue Chase unless they restored the APR to 7.99%. *Id.* Chase responded to the letter, pointing to the language in the New Cardmember

---

[2] The parties dispute whether this amount was $3,000 or "less than $1,000." *Compare* Boyd Aff., Doc. 20-1 at 2 ¶ 8, *with* Def's Mot. for Summary Judgment, Fact # 8, Doc. 30 at 5. The Court finds this dispute immaterial.

3

Agreement permitting such changes. Boyd Aff., Exhibit D, Doc. 20-1 at 14-15. Chase accordingly refused to restore the APR to 7.99% on his card. *Id.* at 14.

B.     Procedural history

Plaintiff filed this case in state court on June 12, 2018. Doc. 1-1. He then filed a First Amended Complaint and a Second Amended Complaint. Docs. 1-2 & 1-3. The Second Amended Complaint alleges that Defendant violated "Truth In Lending and Regulation Z" by "unilaterally changing the rate of interest on this account." Doc. 1-3 ¶ 6. Defendant removed the case to federal court on August 6, 2018, explaining that the Truth in Lending Act ("TILA") and Regulation Z are both federal laws, thus conferring original jurisdiction on federal district courts pursuant to 28 U.S.C. § 1331. Doc. 1 at ¶¶ 6-7. Plaintiff did not file a motion to remand and has subsequently argued in his briefing that Defendant violated federal law by changing the APR on his credit card. *E.g.*, Doc. 21 at 1 (citing TILA and Regulation Z); Doc. 37 at 3. Thus, the Court finds that it has original jurisdiction over this matter.

Currently pending before the Court are three motions: (1) Motion for Judgment on the Pleadings, filed by Defendant on March 20, 2019 (Doc. 19); (2) Motion for Partial Summary Judgment, filed by Plaintiff on March 28, 2019 (Doc. 20); and (3) Motion for Summary Judgment, filed by Defendant on May 3, 2019 (Doc. 30). On September 10, 2019, the parties consented to the undersigned to "conduct any and all proceedings and enter a final order as to each motion." Doc. 47. Under 28 U.S.C. § 636(c)(3), appeal of this order lies to the Tenth Circuit Court of Appeals.

The Court grants Chase's Motion for Summary Judgment and denies Plaintiff's Motion for Partial Summary Judgment. Chase's Motion for Judgment on the Pleadings is accordingly denied as moot.

4

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine dispute as to any material fact unless the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, a dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (internal quotation marks omitted). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.*

## DISCUSSION

Plaintiff's Second Amended Complaint has no separately delineated causes of action, and his Motion for Partial Summary Judgment does not clarify any causes of action.[3] Nonetheless,

---

[3] Plaintiff is proceeding pro se, but he is a licensed attorney. *See* State Bar of New Mexico, Online Bar Directory, Profile of "Mr. John Ronald Boyd," https://www.nmbar.org/Nmstatebar/ FindAnAttorney. He is thus not entitled to liberal construction of his pleadings or arguments. *Comm. on the Conduct of Attorneys v. Oliver*, 510 F.3d 1219, 1223 (10th Cir. 2007); *Mann v. Boatright*, 477 F.3d 1140, 1148 n.4 (10th Cir. 2007); *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001).

the Court agrees with Chase that two causes of action can be inferred from the allegations in the Second Amended Complaint: (1) breach of contract; and (2) violation of the federal Truth in Lending Act and its implementing regulations. The Court will address each in turn.

I.  **Chase Did Not Breach A Contract When It Raised The APR On Plaintiff's Credit Card.**

   A.  <u>Cardmember Agreements</u>

Chase requests summary judgment on the issue of whether its contract with Plaintiff permitted it to raise the APR on his card. Doc. 30. Plaintiff similarly requests summary judgment on the issue of whether a "fixed APR" must stay permanently fixed and cannot be modified by the credit card company under any circumstances. Doc. 20. The Court grants Chase's motion and denies Plaintiff's motion because both the Original Cardmember Agreement and the New Cardmember Agreement allow Chase to change the APR on Plaintiff's credit card at any time. Doc. 26-3 at 4; Doc. 26-7 at 6. Plaintiff may stop using his card or close his account if he disagrees with the new APR. Doc. 25-6 at 1. Because the contract between the parties expressly permits Chase's challenged conduct, there is no breach of contract.

Plaintiff resists this straightforward conclusion with a variety of arguments but cites no authority in support of any of them. First, although Plaintiff does not dispute that he received the Cardmember Agreements, he claims he never consented to their terms. Doc. 37 at 2. The agreements state that they apply if the cardholder uses the account for any purpose, and the cardholder may reject the terms by closing the account and not using the card. Original Cardmember Agreement, Doc. 26-3 at 1; New Cardmember Agreement, Doc. 26-4 at 6 ("Your use of the account or any payment on the account indicates your acceptance of the terms of this agreement"). Plaintiff clearly did not reject the terms as he proceeded to use his credit card account for many years. Plaintiff does not develop any argument, or cite any authority, that a

card issuer is not permitted to accompany the use of its card with terms and conditions that constitute a valid contract between the parties.

Perhaps as a result of this, Plaintiff primarily focuses on the solicitation brochure that he received in 2005 rather than on the Cardmember Agreements. Doc. 20 at 3-4. He claims that the brochure is "ambiguous" because it stated that the APR of 7.99% would be "fixed," and that footnote 3 advising that the APR could change was "hidden on the back." *Id.* Even if true, however, Plaintiff cites no authority in support of the proposition that the brochure created a contract between the parties that modified the Cardmember Agreements. He likewise cites no authority for the proposition that footnotes accompanying an advertisement create ambiguity.

Sitting in diversity, this Court looks to the forum state's law, including its choice-of-law rules. *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 123 F.3d 1351, 1352-53 (10th Cir. 1997). The initial question is one of contract formation. "For a contract to be legally valid and enforceable, it must be factually supported by an offer, an acceptance, consideration, and mutual assent." *DeArmond v. Halliburton Energy Servs., Inc.*, 2003-NMCA-148, ¶ 9, 134 N.M. 630, 634. The Court has been unable to locate New Mexico case law on the topic of credit card solicitations, but finds the analysis of the Ninth Circuit, applying California law, to be persuasive. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1205 (9th Cir. 2010). In California, "[t]here is a binding offer only if it is reasonable to conclude, based on all the surrounding circumstances, that acceptance will leave nothing further to negotiate or do before the contract is effective." *Id.* (quoting *Donovan v. RRL Corp.*, 26 Cal.4th 261, 27 P.3d 702, 709 (2001); internal quotation marks omitted); *see also Tatsch v. Hamilton-Erickson Mfg. Co.*, 1966-NMSC-193, ¶¶ 9-10, 76 N.M. 729, 733 (an offer is binding only if there is mutual assent to all its terms with no further communication). Thus, a credit card solicitation, which requires the consumer to apply

for credit and the issuer to approve the application, is not a binding offer of contract. *Rubio*, 613 F.3d at 1205.

The Cardmember Agreements, not the solicitation brochures, constitute the contract between the parties. Accordingly, Chase properly invokes the choice-of-law clause in the Cardmember Agreements stipulating that the governing law is that of Delaware. Doc. 30 at 8; Original Cardmember Agreement, Doc. 26-3 at 4; New Cardmember Agreement, Doc. 26-4 at 14. Plaintiff's Motion for Partial Summary Judgment relies on New Mexico law to support his argument that ambiguities in the contract should be construed against the drafter, Doc. 20 at 4, but he develops no reasoned argument with citation to authority on why New Mexico law would govern this dispute. In fact, in his Response to Chase' Motion for Summary Judgment, he changes course and cites to Delaware law. Doc. 27 at 30.

New Mexico courts would enforce the Delaware choice-of-law clause unless it offends New Mexico public policy. *Reagan v. McGee Drilling Corp.*, 1997-NMCA-014, ¶ 8, 123 N.M. 68, 70. The public policy exception should be invoked only in "'extremely limited' circumstances." *Id.* ¶ 9. Plaintiff makes no attempt to analyze whether Delaware law offends New Mexico public policy. The Court will therefore assume Delaware law applies to his breach-of-contract claim.

Delaware law concurs that the Cardmember Agreements—and not the solicitation brochure—constitutes the parties' contract. *Grasso v. First USA Bank*, 713 A.2d 304, 307-08 (Del. Super. Ct. 1998). And, under Delaware law, the Cardmember Agreements are lawful. The credit card issuer does not breach the Cardmember Agreements by invoking its right to alter a fixed APR in favor of a variable APR, with notice to the cardholder. *Id.* at 310-11. There is no "bait and switch" because a cardholder is free to stop using his credit card if he disagrees with

8

the new terms. *Id.* at 309, 311. This Court concurs that the Cardmember Agreements in this case constitute the governing contract and are unambiguous. Under their terms, the issuer may change the fixed rate into a variable rate. Plaintiff's argument ignores that he enjoyed the benefit of a fixed APR for many years,[4] and he is free to stop placing charges on his card if he disagrees with the change to his rate.

Even if Plaintiff were correct that the solicitation brochure somehow affects the terms of his use of the card, the Court disagrees that it is ambiguous. As described above, the solicitation brochure places the footnote warning of possible changes to the APR exactly where it is most likely to be read—attached to the word "APR" in the same sentence in which it advertises the 7.99% fixed rate. There is no contradiction between the advertisement of the fixed APR and the warning in footnote 3. Read in full, the brochure advises that the APR will be fixed at 7.99% until the card issuer changes it. There is no ambiguity and no misrepresentation in this brochure. And, rather than being buried in the fine print of a referenced Terms and Agreement, the language on the footnote is set forth on the next page of the brochure. Plaintiff's failure to read footnote 3 is unreasonable under either New Mexico or Delaware law. *Sisneros v. Citadel Broad. Co.*, 2006-NMCA-102, ¶ 18, 140 N.M. 266, 271 (describing "the general rule that a person has a duty to read a contract and familiarize himself with its contents," unless the opposing party made fraudulent misrepresentations about the contents of the contract); *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 68 A.3d 665, 677 (Del. 2013) ("failure to read bars a party from seeking to avoid or rescind a contract," as long as the opposing party's

---

[4] Any balance Plaintiff had previously incurred at a 7.99% APR would remain subject to that percentage rate; only *new* charges would accrue interest at the higher rate. Doc. 26-7 at 1. Thus, the present case does not present the situation where a credit card company lulls a consumer into accruing a large balance under one rate only to raise that rate when it grows so large that the consumer must pay it off over time.

"conduct does not amount to a failure to act in good faith and in accordance with reasonable standards of fair dealing").

Chase is entitled to summary judgment in its favor on Plaintiff's breach of contract claim. Plaintiff's Motion for Partial Summary Judgment is therefore denied.

B. <u>Settlement Agreement</u>

In his Motion for Partial Summary Judgment, Plaintiff also highlights that, in the settlement following his first lawsuit in state court, Chase agreed to return his card to a fixed 7.99% APR. Doc. 20 at 4. To the extent Plaintiff's complaint can be read to allege breach of that settlement agreement, Chase is entitled to summary judgment.

In its response to Plaintiff's Motion for Partial Summary Judgment, Chase submitted an affidavit from Michelle Frasco, a Vice President of JPMorgan Chase Bank, N.A. *See* Def's Exhibit 1, Doc. 26-1 ("Frasco Aff."). Ms. Frasco avers that "Chase maintains up-to-date records concerning the credit cards it issues in its electronic record-keeping system." Frasco Aff., Doc. 26-1 ¶ 2. Ms. Frasco has access to the relevant business records of Chase, "including the relevant business records for and relating to Plaintiff John Ronald Boyd's credit card account." *Id.* She reviewed those records and has personal knowledge of how they are kept and maintained. *Id.* "The Account records are maintained by Chase in the course of its regularly conducted business activities and are made at or near the time of the event, by or from information transmitted by a person with knowledge." *Id.* "It is the regular practice to keep such records in the ordinary course of a regularly conducted business activity." *Id.* She avers that "Exhibit 1-A to this Affidavit is a true and correct copy of the Agreement Of Settlement And Release (the 'Settlement Agreement') entered into by John Ronald Boyd and Chase Bank USA, N.A., in June 2010, pursuant to which the parties resolved the Action identified therein as Case No. D-0101-CV-2010-01693, pending in the First Judicial District Court, State of New Mexico, County of Santa Fe." *Id.* ¶ 4; *see* Def's

Exhibit 1-A, Doc. 27-1. The Court finds Ms. Frasco's affidavit contains sufficient material to establish the hearsay exception under the business records rule,[5] and Plaintiff does not argue otherwise. Chase has therefore submitted material, admissible evidence as to the terms of the Settlement Agreement.

The Settlement Agreement expressly reserved Chase's "right to change Plaintiff's account terms pursuant to the cardmember agreement or invoke other applicable provisions of the cardmember agreement." Doc. 27-1 at 2-3, ¶ 5. Therefore, Chase did not breach this agreement when it raised the APR on Plaintiff's card in 2018. In his response to Chase's motion for summary judgment, Plaintiff points out that Chase's copy of the Settlement Agreement does not contain his signature, but he admits that "he saw this, or something similar" and argues that "recalls the settlement to provide an unequivocal fixed rate of 7.99% APR." Doc. 37 at 1. Plaintiff does not provide an affidavit, a competing version of the settlement agreement signed by both parties, or any other record evidence sufficient to create a material dispute of fact as to whether the reservation-of-rights provision was part of the Settlement Agreement. He therefore fails to meet his burden to present record evidence establishing a breach of the Settlement Agreement.

Plaintiff also argues that the word "terms" in the Settlement Agreement should not be read to include the APR on his card. Doc. 35 at 2. Plaintiff offers no dictionary definition of this

---

[5] "Rule 803(6) of the Federal Rules of Evidence provides an exception to the hearsay rule for business records if they are 'kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum record.'" *United States v. Gwathney*, 465 F.3d 1133, 1140 (10th Cir. 2006) (alteration omitted). To satisfy Rule 803(6), "a document must (1) have been prepared in the normal course of business; (2) have been made at or near the time of the events it records; (3) be based on the personal knowledge of the entrant or of an informant who had a business duty to transmit the information to the entrant; and (4) not have involved sources, methods, or circumstances indicating a lack of trustworthiness." *Id*. at 1140-41 (internal quotation marks and alteration omitted).

word or any case law interpreting it. The Court finds that the ordinary meaning of the phrase "account terms pursuant to the cardmember agreement" in the Settlement Agreement encompasses the APR on the card. Black's Law Dictionary defines "term" in this context to mean "[a] contractual stipulation." Black's Law Dictionary (11th ed. 2019). It is reasonable that provisions in a contract relating to the APR constitute contractual stipulations. The Court finds that the use of the word "terms" in the Settlement Agreement is not confusing or ambiguous. Chase did not breach the Settlement Agreement by raising the APR on Plaintiff's credit card.

## II.     Chase Is Entitled To Summary Judgment On Plaintiff's Federal Claims.

Chase also moves for summary judgment on the issue of whether it violated the Truth in Lending Act ("TILA") and its implementing regulations by increasing the APR on Plaintiff's credit card. Doc. 30 at 10-11. The operative complaint, Plaintiff's Second Amended Complaint, alleges in relevant part: "By unilaterally changing the rate of interest on this account, Defendant violates Truth In Lending and Regulation Z by falsely stating the interest being charged, entitling Plaintiff to recover his legal fees." Compl. ¶ 6, Doc. 1-3 at 1. The Court determines that Chase did not violate federal law by advertising a fixed APR of 7.99% and subsequently raising the APR on Plaintiff's credit card. The Court does not reach any other issue that could have been presented under the TILA or Regulation Z because Plaintiff does not raise any.

### A.     Plaintiff's request to defer ruling on the motion is denied.

In Plaintiff's response to Chase's motion for summary judgment, he announces that he "choses [sic] not to go into the technicalities of possible TILA violations at this time." Doc. 37 at 3. He requests the Court defer ruling on the TILA and Regulation Z claim until after deciding the breach of contract claim. *Id.* Even though Plaintiff is not entitled to liberal construction of his pleadings, the Court will nonetheless construe this as a motion under Federal Rule of Civil Procedure 56(d).

Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." The Tenth Circuit has explained that "[t]he party requesting additional discovery must present an affidavit that identifies 'the probable facts not available and what steps have been taken to obtain these facts.'" *F.D.I.C. v. Arciero*, 741 F.3d 1111, 1116 (10th Cir. 2013). "The nonmovant must also explain how additional time will enable him to rebut the movant's allegations of no genuine issue of material fact." *Id.*

Plaintiff has attached no affidavit, has made no arguments regarding insufficient facts available to him, and has failed to explain the relevance of any hypothetically missing facts. He therefore has not made a sufficient showing to avoid summary judgment through application of this rule. His subjective desire to avoid briefing the issue, despite Chase's motion requesting summary judgment at the appropriate time per the governing scheduling order, will not suffice. Plaintiff's request for a deferred ruling is denied.

B. <u>Raising the APR is not a violation of federal law.</u>

"Congress passed TILA to promote consumers' informed use of credit by requiring meaningful disclosure of credit terms, and granted the Board [of Governors of the Federal Reserve System] the authority to issue regulations to achieve TILA's purposes." *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 198 (2011) (citing 15 U.S.C. §§ 1601(a) & 1604(a); internal quotation marks omitted). "Pursuant to this authority, the Board promulgated Regulation Z, which requires credit card issuers to disclose certain information to consumers." *Id.* Regulation Z "explains what information credit card issuers are obliged to provide to cardholders in the 'initial disclosure statement,' including 'each periodic rate that may be used to compute the finance charge.'" *Id.* (quoting 12 C.F.R. § 226.6(a)(2); alterations omitted). It also "imposes upon issuers

13

certain 'subsequent disclosure requirements,' including a requirement to provide notice 'whenever any term required to be disclosed under § 226.6 is changed.'" *Id.* (quoting 12 C.F.R. § 226.9(c)(1); alterations omitted).

Prior to 2009, "notice of a change in terms ha[d] to be provided 15 days in advance of the effective date of the change." *Chase Bank*, 562 U.S. at 198. According to "[t]he official interpretation of Regulation," this "'notice must be given if the contract allows the creditor to increase the rate at its discretion but does not include specific terms for an increase . . . .'" *Id.* at 198-99 (quoting 12 C.F.R. pt. 226, Supp. I, Comment 9(c)-1, p. 506 (2008)). In 2009, Congress amended the TILA and the Board amended Regulation Z to require 45 days' notice of most increases in credit card APRs, including when the contract allows the creditor to increase the rate at its discretion. *Id.* at 200-01 (citing the Credit Card Accountability Responsibility and Disclosure Act, 15 U.S.C. § 1637(i); and 74 Fed. Reg. 36077-79). This statutory and regulatory scheme therefore expressly contemplates contracts like the Cardmember Agreements here: a reservation of rights with respect to increasing the APR for any reason, as long as such increase is accompanied by advance notice.[6]

The Court concurs with the decision of the Ninth Circuit in *Barrer v. Chase Bank USA, N.A.*, which noted that TILA and Regulation Z "primarily require[] disclosure" and do not "substantively regulate the terms creditors can offer or include in their financial products." 566 F.3d 883, 887 (9th Cir. 2009). The Ninth Circuit recognized that the Board expressly approved the practice of creditors reserving "the general right to change the credit agreement, as Chase did in this case." *Id.* at 888 (citing 12 C.F.R. Pt. 226 Supp. I, par. 6(a)(2), cmt. 2). "Should the

---

[6] None of Plaintiff's pleadings or briefs challenge the timing of Chase's advance notice under these provisions. Any such challenge is therefore waived.

creditor make changes in these ways," it must simply disclose those changes. *Id.* Relying on these authorities, the Ninth Circuit proceeded to find that Chase comported with federal law in raising an APR from a "preferred rate" of 8.99% to a "non-preferred or default rate" of 24.24%:

> We are persuaded that Chase adequately disclosed the APRs that the Agreement permitted it to use simply by means of the change-in-terms provision. That provision reserved Chase's right to change APRs, among other terms, without any limitation on why Chase could make such a change. The provision thus disclosed that, by changing the Agreement, Chase could use any APR . . . .

*Id.* at 891.

Not every part of *Barrer* is helpful to Chase, however. In addition to the portion of *Barrer* that Chase cites, the Ninth Circuit found that Chase's disclosure was not "clear and conspicuous" because it "appear[ed] on page 10-11 of the Agreement, five dense pages after the disclosure of the APR" and was "neither referenced in nor clearly related to the 'Finance Terms' section." 566 F.3d at 892. This decision flows from TILA's requirement that disclosures such as those at issue here be "clear" and "conspicuous." 15 U.S.C. § 1632(a) (enacted 1988) ("Information required by this subchapter shall be disclosed clearly and conspicuously, in accordance with regulations of the Board."); 15 U.S.C. § 1632 (enacted 2010) (same). Thus, the Court further considers whether Chase's disclosures were clear and conspicuous.

In answering this question and determining whether there has been a meaningful disclosure, the Tenth Circuit has endorsed a common sense approach rather than a technical approach. *Scofield v. Telecable of Overland Park, Inc.*, 973 F.2d 874, 879 (10th Cir. 1992). "[C]ourts have held that 'perfect disclosure' is not required." *Id.* at 880. Applying this standard, and unlike in *Barrer*, here the right to change the APR was clear and conspicuous from the beginning. As the Court explained above, the disclosure in the solicitation was not ambiguous because footnote 3, attached to the very sentence advertising the 7.99% fixed APR, described the right to change the APR. This factor distinguishes Chase's solicitation from those held unlawful

15

for failure to clearly and conspicuously disclose the change-in-terms provision. In *Roberts v. Fleet Bank (R.I.)*, for example, the Third Circuit held that a credit card solicitation, which disclosed only two circumstances in which a fixed APR could change, created a question of material fact as to whether the disclosure was misleading. 342 F.3d 260, 266-67 (3d Cir. 2003). The enumerated list "could lead a consumer to conclude that the rates are subject to change only for the two reasons outlined." *Id.* at 268; *see also Rubio v. Capital One Bank*, 613 F.3d 1195, 1202-03 (9th Cir. 2010) (it was misleading to advertise an APR linked by an asterisk to a list of only three circumstances in which it would change, if the issuer could change the APR for other reasons not listed).[7] The *Roberts* court did, however, "recognize that a fixed rate is not necessarily permanent" and declined to adopt the plaintiff's argument that a consumer "could have concluded that the rate was permanent solely based on the use of the word 'fixed.'" 342 F.3d at 268 n.3.

A sister court considered an issue similar to the one now before the Court in *In re Capital One Bank Credit Card Interest Rate Litigation*, 51 F. Supp. 3d 1316 (N.D. Ga. 2014), *aff'd*, 622 F. App'x 894 (11th Cir. 2015).[8] There, the district court found that "[t]he use of the terms 'fixed'

---

[7] The *Rubio* court relied heavily on the amendment to Regulation Z, effective July 1, 2010, which more clearly defined the term "fixed APR" and limited the circumstances under which it may be used, effectively outlawing the type of solicitation at issue in this case. 613 F.3d at 1200-02; 12 C.F.R. § 226.5(a)(2)(iii). But this Court disagrees that this amendment is in any way relevant to solicitations sent out before its effective date. A year after *Rubio*, the Supreme Court considered a similarly amended provision in TILA and Regulation Z, and rejected the notion that the post-2009 views of Congress and the Board are helpful in determining the pre-2009 meaning of the regulations. *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 210 (2011). The Court likewise declines to use the new § 226.5(a)(2)(iii) to interpret the legality of the 2005 solicitation in this case. *Accord In re Capital One Bank Credit Card Interest Rate Litig.*, 51 F. Supp. 3d 1316, 1348 (N.D. Ga. 2014), *aff'd*, 622 F. App'x 894 (11th Cir. 2015).

[8] The standard applied to TILA claims in the Eleventh Circuit is very similar to that in the Tenth Circuit. *See Veale v. Citibank, F.S.B.*, 85 F.3d 577, 580 (11th Cir. 1996) ("TILA does not require perfect notice; rather it requires a clear and conspicuous notice . . . ."). The Ninth Circuit's

16

and 'low' in solicitation materials is promotional puffing on the part of the company." *Id.* at 1349. "At most, 'low' and 'fixed' mean the same rate going forward and not the same rate for life." *Id.* The court noted that some of the plaintiffs testified that, like the Plaintiff here, "they did not believe [the credit card company] had the right ever to change the annual percentage rates." *Id.* The court rejected this view, finding that "this is not a reasonable understanding of the consumer's rights," particularly in light of the change-of-terms provision in the accompanying Cardmember Agreements. *Id.* In the present case, Chase's argument is even stronger because language clarifying the meaning of the term "fixed" was contained in an accompanying footnote rather than somewhere within a much longer accompanying cardmember agreement.

Further, given that Plaintiff had previously sued Chase for attempting to change his interest rate, the Court would expect Plaintiff to pay special attention to Chase's actual notice of the January 2018 APR increase, as well as to the change-in-terms provision of the New Cardmember Agreement which provided contractual authority for that notice. As for the New Cardmember Agreement, it is clear and conspicuous. It places the change-in-terms disclosure on the first page. Def's Exhibit 1-G, Doc. 26-7 at 6. Under "Getting Started," the contract defines "amendments" as an "important term" and explains that the "terms of this agreement including APRs" may change from time to time. *Id.* Unlike in *Barrer*, 566 F.3d at 892, this is not "fine print" buried several pages away from other relevant information; instead, it is clearly presented at the beginning of the booklet. And finally, the change-in-terms notification itself was extremely clear. Def's Exhibit 1-E, Doc. 26-5. The notification that the APR was changing and the information on the new APR are the sole focus of the document; there is no other fine print and

---

standard, by contrast, is one of "absolute compliance" and "even technical or minor violations of TILA impose liability on the creditor." *Rubio*, 613 F.3d at 1199.

no other disclosures to distract from the APR increase notice. Def's Exhibit 1-E, Doc. 26-5; *cf. Herrera v. First N. Sav. & Loan Ass'n*, 805 F.2d 896, 900 (10th Cir. 1986) (when "over 30 other terms and phrases appearing on the disclosure statement are also printed in capital letters, in the identical size, style and boldness of type" as the APR, the disclosure does not comply with the TILA).

The Court finds Chase's APR increase and its various disclosures to have been lawful under the TILA and Regulation Z. Chase's motion for summary judgment on the federal claims in Plaintiff's complaint is granted.

## CONCLUSION

Chase's Motion for Summary Judgment is GRANTED. Chase is entitled to judgment as a matter of law on all claims in Plaintiff's Second Amended Complaint. Plaintiff's Motion for Partial Summary Judgment is DENIED, and Chase's Motion for Judgment on the Pleadings is DENIED AS MOOT. A separate form of judgment under Rule 54(a) will be issued by the presiding judge.

SO ORDERED.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
Presiding by consent